[Cite as *State v. Lincoln*, 2018-Ohio-1816.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 17CA14 |
| v. | : | |
| | | DECISION AND |
| WESLEY D. LINCOLN, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 05/04/2018 |

## APPEARANCES:

Darren L. Meade, Parks and Meade, LLC, Columbus, Ohio, for defendant-appellant.

Kevin Rings, Washington County Prosecuting Attorney, and Nicole Tipton Coil, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for plaintiff-appellee.

Hoover, P.J.

{¶1}   Defendant-appellant, Wesley D. Lincoln ("Lincoln"), appeals from his conviction and sentence for one count of trafficking in heroin and one count of possession of heroin. The counts were merged for purposes of sentencing; and Lincoln was sentenced to eight years in prison on the trafficking charge, plus an additional one year and 355 days for a post-release control violation. The prison terms were ordered to run consecutive to one another.

{¶2}   Lincoln contends that the trial court erred in its ruling regarding a discovery violation by the State, by allowing the State to introduce evidence when the proper chain of custody had not been established, and by accepting deficient verdict forms.

{¶3}   We conclude that the trial court erred in failing to properly remedy the State's discovery violation; resulting in prejudice to Lincoln and necessitating reversal and remand for a new trial. We further find that Lincoln's remaining assignments of error are rendered moot.

Accordingly, the judgment of the trial court is reversed; and this cause is remanded for further proceedings.

## I. Facts and Procedural History

{¶4}    On February 23, 2016, the Washington County Major Crimes Task Force - pursuant to a search warrant based off a tip from a confidential informant who gave information that Lincoln was involved in drug activity - attached a GPS tracking device to Lincoln's vehicle. Lincoln's vehicle was tracked for 13 days, and then investigators obtained a search warrant to search Lincoln's house in Belpre, Ohio.

{¶5}    On March 7, 2016, officers went to Lincoln's house to execute the search warrant. The officers observed Lincoln walk from the back door of his house to his vehicle. Lincoln was immediately placed in investigative detention. Officers located $1,000 cash on Lincoln's person, $1 cash in the vehicle, and 0.20 grams of suspected heroin in a teddy bear near the rear entryway of the home. Lincoln was then arrested and taken into custody.

{¶6}    Based on a series of jailhouse phone calls between Lincoln and his former girlfriend, Kylie Piatt, investigators believed that more contraband was located at Lincoln's residence. The investigators obtained a second search warrant and went back to the home on March 8, 2016.

{¶7}    On March 8, 2016, Sergeant Coy Lehman, the lead investigator, was in contact with Piatt while the second search warrant was being executed at Lincoln's home. Law enforcement officers obtained $8,600 in cash that Piatt had retrieved from Lincoln's home. Sergeant Lehman instructed Sergeant Scott Mankins, via cell phone, to check by the back fence for a second piece of possible evidence. Sergeant Mankins then found a second bag of suspected heroin by the back fence of the property that was alleged to weigh over 20 grams.

{¶8}    On March 24, 2016, Lincoln was indicted on one count of possession of heroin in violation of R.C. 2925.11(A) & (C)(6)(d) and one count of trafficking in heroin in violation of R.C. 2925.03(A)(2) & (C)(6)(e), both second degree felonies. The trafficking count also contained forfeiture specifications for $9,601 in cash, a 2006 Chevrolet Impala, plus two televisions and a speaker system. Both counts further contained a specification that Lincoln was on post-release control supervision at the time he allegedly committed the offenses. On March 28, 2016, Lincoln pleaded not guilty to all charges and specifications.

{¶9}    The State sent its first discovery response on April 6, 2016. It sent supplemental discovery responses on May 4, 2016, October 14, 2016, and February 6, 2017.

{¶10}   On February 14, 2017, a jury trial commenced. After two days of testimony, Lincoln was found guilty as charged in the indictment. In the verdict forms, the jury further found the amount of the drug involved was at least 10 grams but less than 50 grams. The jury further determined that the $9,601 in currency was subject to forfeiture to the State, as was the 2006 Chevrolet Impala; but it determined that the televisions and stereo system were not. Finally, it was determined that Lincoln was on post-release control when the offenses were committed.

{¶11}   At sentencing, the trial court ruled that the two counts were allied offenses and should merge for purposes of sentencing. Lincoln was then sentenced to eight years in prison for the trafficking offense, plus an additional one year and 355 days for the post-release control violation. The sentences were ordered to run consecutive to one another, and Lincoln was given 403 days of jail-time credit.

{¶12}   Lincoln filed a timely appeal.

## II. Assignments of Error

{¶13}   Lincoln assigns the following errors for our review:

Assignment of Error I:

> The Trial Court erred to the prejudice of Appellant and abused its discretion when it failed to exclude State's exhibit 10, a laboratory report that a substance allegedly found in Appellant's possession weighed approximately twenty-three (23) grams and contained heroin, when said report was not provided in any of the State's four (4) pre-trial discovery disclosures and only was only [sic] revealed to Appellant's counsel on the morning of trial, in violation of Crim.R. 16.

Assignment of Error II:

> The Trial Court abused its discretion by permitting the State to introduce evidence when the proper chain of custody had not been established as required by Evid. R. 901.

Assignment of Error III:

> The Trial Court committed plain error by convicting Appellant of a second degree felony for Possession of Heroin, and a second degree felony for Trafficking in Heroin, when the verdict forms failed to allege the drug he was convicted for possessing and trafficking was heroin, and merely listed the relevant revised code section to support that the drug was heroin and its amount.

### III. Law and Analysis

### A. First Assignment of Error

{¶14}   In his first assignment of error, Lincoln contends that the trial court should have excluded a laboratory report and expert testimony about the report because the State failed to timely produce the report during pre-trial discovery. The State claims that its failure to produce the report during pre-trial discovery was inadvertent, and that the trial court properly exercised its discretion in admitting both the report and expert testimony about it.

{¶15}   Crim.R. 16 guides our consideration of Lincoln's first assignment of error. The rule provides:

> **(A) Purpose, Scope and Reciprocity.** This rule is to provide all parties in a
>
> criminal case with the information necessary for a full and fair adjudication of the

facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures.

* * *

**(B) Discovery: Right to Copy or Photograph.** Upon receipt of a written demand for discovery by the defendant, * * * the prosecuting attorney shall provide copies * * * [of] the following items related to the particular case indictment * * * and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial * * * within the possession of, or reasonably available to the state, subject to the provisions of this rule:

* * *

(3) * * * all laboratory or hospital reports * * *

* * *

**(K) Expert Witnesses; Reports.** An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which

period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

**(L) Regulation of Discovery.**

(1) The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

\* \* \*

{¶16}  The overall objective of the criminal rules " 'is to remove the element of gamesmanship from a trial.' " *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987), quoting *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978). "The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." *Id*.

{¶17}  A trial court has discretion in determining a sanction for a discovery violation. *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). However, "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Papadelis* at paragraph two of the syllabus. A trial court

abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶18}  In *Parson*, the Ohio Supreme Court established three factors that should govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution. The three factors a trial court should consider are: (1) whether the prosecution's failure to disclose was a willful violation of Crim. R. 16, (2) whether foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense, or (3) whether the accused was prejudiced. *Id*. at syllabus; *see also State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 115.

{¶19}  In the case sub judice, the indictment was filed on March 24, 2016, and Lincoln filed a demand for discovery, including the results or reports of any scientific tests, on March 29, 2016. The State responded with its initial discovery response and request for reciprocal discovery on April 6, 2016. The initial response indicated the existence of a single lab report dated March 23, 2016, and prepared by Stanton Wheasler of the Ohio Bureau of Criminal Investigation ("BCI"). This report analyzed the smaller quantity substance retrieved from the teddy bear during the search of Lincoln's home on March 7, 2016. The report found that the substance contained heroin and weighed 0.20 grams plus or minus 0.04 grams. Stanton Wheasler was also disclosed as a potential expert witness.

{¶20}  The State filed supplemental discovery responses on May 4, 2016, October 14, 2016, and February 6, 2017. The supplemental responses did not disclose the existence of any other scientific reports or experts.

{¶21}   Trial began on February 14, 2017. Before the jury was empaneled, the State asked if Lincoln would stipulate to the admissibility of the *two* lab reports prepared by the expert at BCI. Lincoln, through his attorney, responded that he would not stipulate to the reports.

{¶22}   The following day of trial, the State introduced Wheasler as an expert witness and questioned him about the testing and lab report pertaining to the smaller quantity of suspected heroin that had been found in the teddy bear on March 7, 2016. Lincoln did not object to this testimony. Then the State proceeded to introduce a second lab report, also dated March 23, 2016, which analyzed the larger quantity of suspected heroin that had been retrieved near the back fence during the March 8, 2016 search, as well as another off-white powder that had been retrieved by police during the March 8 search. Lincoln's counsel immediately objected to the admission of the second lab report and any testimony regarding the lab report, telling the court that he had just learned of the existence of the report the day prior, when the State asked if Lincoln would stipulate to its findings. He noted that in all of the State's discovery filings, the second lab report had not been disclosed to the defense.

{¶23}   The trial court excused the jury for lunch, and a hearing on the admissibility of the second lab report and related testimony was held outside the jury's presence. Lincoln's counsel argued that the lab report was crucial evidence and the State's failure to disclose the report prejudiced his defense because "[o]ur defense here all along has been, he was in possession of a small amount of heroin", and " that's the only report they have, that gives us a very strong defense on trafficking. It gives us a very strong defense on possession. We would look at, well, we're going to end up with a lesser included offense. That was the line of defense all along." Lincoln's counsel stated, "as an officer of the Court, I believed there was no second report. My client also believed there was no second report. We believed there was an error made by the Task

Force or the officers that were conducting a search. And now we learn the Task Force did not

make a mistake, the error was in the Prosecutor's Office, when they did not turn that report over

to us * * *." The prosecutor argued that if the report had not been given to defense counsel, it

was inadvertent and not willful. He contended that because there was a preliminary hearing in

this case, because evidence tags were provided for the "two separate baggies of heroin", and

because the indictment specifically listed the identity of the drug and weight of the drug, Lincoln

should have been on notice of the evidence and the fact that they were submitted to BCI for

testing.

{¶24} Following argument from counsel, the trial court ruled as follows:

* * * The Court has taken a long hard look at Criminal Rule 16(K) as it

relates to expert witnesses.

The Court would note that if one reads the entire rule and not just the

beginning of the rule, the rule continues that if at any time during the course of

the proceedings, it's brought to the attention of the Court that a party's failed to

comply with this rule, there's some inappropriate – that doesn't matter to this –

the Court may order such party to permit the discovery or inspection, grant a

continuance, or prohibit the party from introducing into evidence the material not

disclosed, or it may make such other order as it deems just under the

circumstances.

In this particular case, and relating specifically to the issue of whether it

was willful or negligent, there's clearly no showing of bad faith by the State here.

It's not – this isn't a case where the State didn't bother to disclose a witness at all,

that they didn't – they didn't indicate that there was no evidence. The indictment, as Counsel's referred to, specifically alleges a quantity of heroin in excess of 20 grams. The evidence in the proceeding previously, and at least portions of the discovery provided by the State, and – and apparently reviewed by previous Counsel in the case looking at it, it would have been fairly apparent that there was more than 0.02 [sic] grams, plus or minus 0.04 grams, as a plus or minus.

The issue of knowledge in advance * * * foreknowledge of the information would have benefitted the accused. The accused can certainly express, I guess, even outrage that the State failed to provide the report, but it can't really claim to have no knowledge at all that the charge here was only 0.02 [sic] grams.

The Court has granted, essentially, an hour-and-a-half during the lunch period of a continuance to allow the Defense to review State's Exhibit 10, which as a practical matter is two pages, plus the – the expert witnesses. The expert was identified to the Defense. The evidence was available to be reviewed.

The Court's – certainly, if the Defense wants additional time to review the report or speak with the – the witness, the Court will grant a reasonable period of time for the Counsel to do that, but the Court finds that under all the circumstances, that the objection of the Defense will be denied, and that Attorney Wheasler will be allowed to test—or, not Attorney Wheasler, but the witness, Mr. Wheasler, will be allowed to testify to the State's Exhibit 10, and * * * it'll be admitted as part of the evidence in this case.

{¶25} Defense counsel declined the opportunity to take more time to review the report and talk to the expert, stating "with all due respect, * * * it is not a meaningful resolution for us to deal with that evidence. We were told there was no report and nothing we can do about it now." Wheasler then testified in regards to his findings in the second lab report, noting that two substances were tested, with one substance weighing approximately 100.83 grams found not to contain controlled substances, while a second item, weighing approximately 23.53 grams, was found to contain heroin. Both lab reports were eventually admitted as evidence.

{¶26} First, we think that in the exercise of due diligence, the existence of the second lab report should have been known to the prosecutor's office well in advance of trial. At a minimum, inadvertence or negligence appears to be involved in failing to disclose the second lab report in compliance with Lincoln's discovery request. Nevertheless, in the absence of any evidence contradicting the State's explanation, we cannot find on this record that the State's failure to comply with Lincoln's discovery request was a willful violation of Crim.R. 16.

{¶27} As to whether foreknowledge of the second lab report would have benefitted Lincoln in the preparation of his defense, we conclude that it clearly would have. "[O]ne could ask how a defendant can prepare to defend a drug possession [or drug trafficking] case if he does not know what the laboratory reports state. For instance, counsel would want to know the answers to the following questions to prepare for trial: what kind of drugs were discovered, did any substances test negative for drugs, what was the amount of drugs found in each place, was any amount so small that it was just residue on the paraphernalia, do any of the reports deal with fingerprints on the paraphernalia or bags, and who are the scientists that will have to be cross-examined?" *State v. Brooks*, 7th Dist. Jefferson No. 04JE10, 2004-Ohio-4546, ¶ 35. Without

knowing the expert's findings, or in this case, that chemical analysis was even conducted on a key piece of evidence, Lincoln was left in the dark in trying to prepare a defense.

{¶28} Finally, as to whether the lab report evidence and accompanying expert testimony operated to the prejudice of Lincoln, clearly it did. Expert testimony concerning the contents and weight of the substance found near the fence was obviously important, if not essential, evidence for the jury to consider concerning the charges of drug possession and drug trafficking. That evidence was compelling and important in establishing that Lincoln had committed the crimes charged, and it operated to Lincoln's prejudice. This is especially true given Lincoln's theory of defense, which was that the State could not prove the contents or *weight* of the substances seized from his home.

{¶29} The State argues that the decision and rationale announced by the Fifth District Court of Appeals in *State v. Burns*, 2016-Ohio-7375, 72 N.E.3d 1068 (5th Dist.), should apply in this case.[1] The defendant in *Burns* was charged with one count of illegal manufacture of methamphetamine, in the vicinity of a school zone and/or juvenile; one count of illegal assembly or possession of chemicals for the manufacture of methamphetamine, in the vicinity of a school zone and/or juvenile; and two counts of child endangering. *Id*. at ¶ 9. The charges stemmed from a search of the defendant's residence, in which items commonly associated with the manufacture of methamphetamine were confiscated from the basement. *Id*. at ¶ 8. Liquid found in a one-pot cooking vessel was sent to a laboratory for testing. *Id*. Six days prior to the start of trial, the State provided supplemental discovery "identifying * * * [for the first time the] expert witness who tested a substance from the search and provided a lab report * * * identifying said substance as methamphetamine." *Id*. at ¶¶ 11, 13. Four days prior to trial, the defense filed a motion in limine

---

[1] The State also argued that this case applied during the trial court hearing on this issue; and it appears that the trial court, in part, relied upon *Burns* in making its ruling.

seeking to preclude introduction of the expert report and the making of reference to any substance identified as methamphetamine. *Id*. at ¶ 12. Prior to the start of trial, the defendant again motioned the court to exclude the expert witness testimony and the lab report. *Id*. at ¶ 14. The trial court overruled the motion as to the expert testimony and lab report, the matter proceeded to trial, and the defendant was found guilty of the charges. *Id*. at ¶¶ 15, 17. On appeal, the appellate court considered Crim.R. 16, and the factors cited above, and determined that the State's late disclosure of their expert witness and the lab report was not prejudicial to the defendant's theory of defense. *Id*. at ¶ 61. The appellate court further noted that the defendant was aware that items consistent with the manufacture of methamphetamine and chemicals necessary for the manufacture of methamphetamine were confiscated from her home, even though her theory of defense was that she had no knowledge of the methamphetamine lab. *Id*. at ¶ 62. Thus, the appellate court held that the trial court did not error in denying defendant's motion in limine. *Id*. at ¶ 63.

{¶30} We believe *Burns* is distinguishable from the case sub judice. Of note, the expert witness and lab report in *Burns* was disclosed to the defense six days prior to trial, whereas the existence of the second lab report in this case first became known to the defense on the first or second day of trial. Second, the trial court in *Burns* held a hearing on the admissibility of the evidence prior to trial, whereas here, a hearing on the admissibility of the evidence was not held until the second day of trial. Finally, and perhaps most importantly, the defendant in *Burns* alleged that the late disclosure of the evidence was prejudicial because she was unable to have the substance independently tested or to obtain her own witness to testify as to the substance. *See Burns* at ¶ 56. In essence, the theory of defense in *Burns* was that the defendant was unaware of the methamphetamine lab in her basement, as other adult co-residents shared the house. *See*

*Burns* at ¶ 62. Here, Lincoln is not alleging that drugs were not present at his house. Rather, his defense, based on the evidence that had been turned over in pre-trial discovery, was that the State could not prove the existence and *weight* of the drugs that formed the basis of the indictment. Thus, in contrast to *Burns*, the late disclosure of the second lab report was prejudicial to Lincoln's theory of defense.

{¶31}   We believe the case sub judice is more similar to *State v. Bowshier*, 2d Dist. Clark No. 06-CA-41, 2007-Ohio-5364. The defendant in *Bowshier* was charged with two counts of trafficking in drugs and four counts of drug abuse. *Id*. at ¶ 11. The charges arose from an incident where the defendant tried to purchase 200 pounds of marijuana from an undercover police officer in exchange for two kilos of cocaine, $20,000, and two car titles; and from the subsequent search of the defendant's house in which "several suspected drug-related items, including a black duffel bag containing baggies and suspected marijuana and cocaine", and "suspected cocaine in a purse in a closet, and in a bedroom occupied by an adult woman" were confiscated. *Id*. at ¶¶ 4-10. At trial, after the jury was empaneled, the defendant's attorney notified the court that he had just learned that the State had a lab report that had not been disclosed during discovery, and that had analyzed the drugs referred to in counts 1, 2, 5, and 6 of the indictment. *Id*. at ¶ 28. The State had previously given defense counsel only one lab report that analyzed the drugs mentioned in count 4 of the indictment. *Id*. at ¶ 29. Defense counsel asked the trial court to grant a mistrial or to grant a continuance. *Id*. at ¶ 34. The trial court refused, contending that the police report put the defendant on sufficient notice of the identity and amounts of drugs involved. *Id*. The trial court did indicate that it would grant a "continuance" to the extent of allowing defense counsel to speak to the expert who had conducted the lab tests. *Id*. at ¶ 36. Defense counsel rejected the opportunity, stating that there would be no purpose because the expert was obviously going to

testify that the tested items contained controlled substances. *Id*. Ultimately, both the lab report and the expert's testimony was admitted and the defendant was found guilty of the charges. *Id*. at ¶¶ 36, 11.

{¶32} On appeal, the defendant argued, *inter alia*, that the trial court should have excluded the laboratory report and expert testimony about the report because the State failed to timely produce the report. *Id*. at ¶ 14. The appellate court discussed Crim.R. 16 and the *Parson* factors, and ultimately determined that the trial court should have granted the defendant a meaningful continuance as a remedy for the State's discovery violation. *Id*. at ¶ 3. Thus, it sustained the assignment of error. *Id*. at ¶ 50. In doing so, the appellate court noted, "[b]ecause [the defendant] was charged with possession of drugs and trafficking in drugs, the defense would have benefitted from foreknowledge of the laboratory report, which outlined both the weight and identity of the drugs that were found." *Id*. at ¶ 33. It further stated that a defendant's theory of the case is oftentimes determined in response to the evidence identified in discovery. *Id*. "If a defendant in a drug case perceives a weakness in the evidence relied upon by the State to prove the weight and identity of the drugs, he may well chose to defend upon that ground". *Id*. Finally, the appellate court stated that the defendant was prejudiced because "the evidence was critical, at least to the cocaine possession and trafficking charges, because the State could not have proven the matter without scientific evidence" and the defendant did not have the ability to meaningfully contest the expert testimony given the late disclosure. *Id*.

{¶33} The similarities between *Bowshier* and the case sub judice are numerous. Both cases involve at least two lab reports, with one report being revealed to the defense for the first time on the day of trial. Both trial courts permitted the defense time to interview the expert witness, but otherwise ruled that the lab reports and expert testimony would be admissible. Both

defendants in each case formulated a theory of defense based on the evidence that had been

disclosed during pre-trial discovery, and their defenses were sabotaged by the late disclosures.

The lab reports in each case were essential pieces of evidence necessary for the State to prove the

charges. Given these similarities, we find the holding and rationale of *Bowshier* to be much more

persuasive than the holding and rationale avowed in *Burns*.

{¶34} Based upon this record and legal jurisprudence, we conclude that the trial court

abused its discretion when it refused to either exclude the lab report or grant a meaningful

continuance as a sanction for the State's failure to comply with Lincoln's discovery request. The

lesser sanction as applied by the trial court, i.e., the brief 90-minute lunch recess, is not

consistent with the purposes of the criminal discovery rules. *See State v. Wilson*, 91 Ohio App.3d

611, 616-617, 632 N.E.2d 1384 (2d Dist.1993) ("Effective representation generally requires

more than an interview in a courthouse hallway."); *Bowshier* at ¶ 38 (while courts have

discretion in selecting appropriate sanctions for discovery violations, "discretion to select a

sanction is different from imposing no sanction at all"). "The trial court's discretion in

fashioning sanctions under Crim.R. 16 is broad, but not unlimited." *Wilson* at 616. "The purpose

of the sanctions authorized by the rule is to relieve the objecting party of the prejudice created by

his adversary's discovery failure." *Id*. "While the least onerous form of sanction is generally

preferred, * * * the court's adoption of it constitutes an abuse of discretion when on the record

before the court that sanction is insufficient to relieve the prejudice the discovery failure has

created." *Id*.

{¶35} Accordingly, Lincoln's first assignment of error is sustained.

**B. Second and Third Assignments of Error**

{¶36}  Because our determination of Lincoln's first assignment of error necessitates reversal and a remand of the matter to the trial court, we find his second and third assignments of error moot. *See* App.R. 12(A)(1)(c).

### IV. Conclusion

{¶37}  For the foregoing reasons, we conclude that the trial court abused its discretion when imposing its sanction for the State's discovery rule violation. Accordingly, we sustain Lincoln's first assignment of error. Because our resolution of Lincoln's first assignment of error requires that the case be remanded, his remaining assignments of error are rendered moot.

{¶38}  We therefore reverse the judgment of the trial court and remand the cause to the trial court for a new trial.

JUDGMENT REVERSED AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED AND THIS CAUSE IS REMANDED for further proceedings consistent with this opinion. Appellee shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment and Opinion.
McFarland, J.: Dissents.

For the Court

By: _____
        Marie Hoover, Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**